Scudder, P.J., and Lindley, J.
(dissenting). We respectfully dissent. We disagree with the conclusion of the majority that Supreme Court abused its discretion in denying defendant’s motion seeking to present expert testimony on the reliability of the eyewitness identification of defendant. The court denied the motion in limine, but granted leave to renew at the close of the People’s case. The court denied the motion on renewal after having the opportunity to hear the detailed testimony of the eyewitness, and to assess the credibility of defendant’s accomplice and the reliability of his identification of defendant, before determining that the testimony of the accomplice provided sufficient corroboration for the eyewitness testimony (see People v Lee, 96 NY2d 157, 162-163 [2001]).
Although “the case turns on the accuracy of [the] eyewitness identification[ ]” (People v LeGrand, 8 NY3d 449, 452 [2007]), we conclude that the identification of defendant by the eyewitness was corroborated by the reliable testimony of the accomplice, and thus we disagree with the majority that an analysis of the factors in the second stage of the LeGrand analysis is necessary (see generally People v Santiago, 17 NY3d 661, 669 [2011]). In any event, we respectfully disagree with the majority that expert testimony regarding the impact of “event violence,” “event duration,” and “weapon focus” on the reliability of eyewitness identification is generally accepted in the scientific community. Indeed, the Court of Appeals has previously concluded that a Frye hearing was required with respect to those precise factors (see People v Abney, 13 NY3d 251, 268 [2009]). We also disagree with the majority’s conclusion that the court’s denial of the request for a Frye hearing constitutes a determination that the proposed testimony is based on principles that are generally accepted in the scientific community. Instead, the court denied the request for the Frye hearing, which was made in the alternative to the motion to admit the expert testimony, because it determined that the expert testimony was “not needed.”
We agree with the court that, here, expert testimony on eyewitness recognition memory was “not needed” to assist the jury because the record establishes that the eyewitness provided very detailed testimony regarding the events, including a description of defendant and his actions, which was sufficiently corroborated by the identification of defendant by one of his accomplices. Contrary to the assertion of the majority, we do not conclude that the conditions under which the eyewitness viewed defendant corroborate his identification of defendant but, instead, we conclude that those conditions support the *1457 reliability of that testimony (see generally People v Young, 7 NY3d 40, 45 [2006]). The eyewitness testified that he observed a man exit a white Chevy Malibu at the victim’s barbershop on the evening of December 27, 2008 at approximately 10:00 p.m. and the man asked the victim whether he could still get a haircut. The eyewitness testified that while the man was seated in the barber chair, he was seated in another barber chair, nine feet from the door in the well-lit room, with an unobstructed view of the door. He observed three men enter the barber shop, and each of the men looked directly at the eyewitness. The third man, whom he identified as defendant, was described by the eyewitness as “lighter than the rest of them” and “tall . . . The other two that came in were short, shorter.” The eyewitness described defendant as wearing dark jeans and an orange coat with a baseball cap that matched his coat. He testified that defendant “looked at [him] before he turned to lock the door” and that the deadbolt lock did not work. Defendant’s face was not concealed in any manner (cf. Santiago, 17 NY3d at 664; Young, 7 NY3d at 42). “It does not require scientific research ... to establish that an identification is more reliable when the witness’s original opportunity to observe was good” (Young, 7 NY3d at 45).
The eyewitness also described the other participants by the clothing they wore, their skin tone, and the order in which they entered the barber shop. He explained that the first man (hereafter the shooter) asked “where’s the bud at,” meaning marihuana. The eyewitness described the events as they unfolded in detail; he described what specific participants said and how the shooter shot the victim, and he testified that the shooter held a gun to his head, that the man in the barber chair produced a gun, that a third man also had a gun, that the men, including defendant, searched the barbershop for drugs, and that the man in the barber chair exited the barber shop first and the shooter exited last. Thus, we conclude that the opportunity for the eyewitness to observe defendant was not brief (cf. Santiago, 17 NY3d at 664), or “fleeting” (Abney, 13 NY3d at 257).
The court also did not abuse its discretion in determining that the eyewitness’s testimony was corroborated by the testimony of defendant’s accomplice, Willie Harvey (see Abney, 13 NY3d at 269). Harvey testified that he and his brother met his cousin and two men he did not know at his cousin’s house. He observed his cousin and the two men enter a vehicle, and he and his brother drove to the barber shop in a white Chevy Malibu, which his brother exited to enter the barber shop. *1458 Harvey testified that he parked the Malibu to wait for the others. He estimated that he waited 10 to 15 minutes, based on the fact that he made two telephone calls while he waited. He observed his brother, cousin and the other two men walk towards his car and the men traveled in two cars to his cousin’s house. At his cousin’s house, while still seated in the driver’s seat, Harvey observed the four men place marihuana and “two or three” handguns on the hood of the Malibu. Although Harvey did not know defendant personally before the night in question, the record establishes that he observed defendant before and after the crime (see generally People v Muhammad, 17 NY3d 532, 546 [2011]). We therefore conclude that Harvey’s testimony “harmonize [d] with the [eyewitness’s] testimony in such a manner as to furnish the necessary connection between the defendant and the crime” (People v Nazario, 100 AD3d 783, 784 [2012], lv denied 20 NY3d 1063 [2013]).
Although the majority properly notes that Harvey failed to identify defendant in a photo array, Harvey explained on redirect examination that he recognized defendant but did not identify him because he did not know at that time what part his brother played in the crimes. The majority also properly notes that Harvey was characterized by the prosecutor as “a liar.” We nevertheless disagree with the majority’s conclusion that Harvey’s “dubious credibility” with respect to portions of his testimony renders his identification of defendant unreliable for the purpose of providing corroborative evidence of the eyewitness identification. Instead, we conclude that the court, which observed Harvey and heard his testimony, is in the best position to determine whether the testimony with respect to Harvey’s ability to identify defendant was sufficient to establish the reliability of that identification, and thus to constitute sufficient corroborating evidence of the eyewitness identification (see generally Allen, 13 NY3d at 269; Lee, 96 NY2d at 163).
“A trial court may, in its discretion, admit, limit, or deny the testimony of an expert on the reliability of eyewitness identification, weighing a request to introduce such expert testimony ‘against other relevant factors, such as the centrality of the identification issue and the existence of corroborating evidence’ ” (Santiago, 17 NY3d at 668-669, quoting Lee, 96 NY2d at 163). Because we conclude that the court did not abuse its sound discretion in denying the motion to present expert testimony on the reliability of the eyewitness identification (see Lee, 96 NY2d at 163), we would affirm the judgment.
Present — Scudder, P.J., Centra, Peradotto, Lindley and Whalen, JJ.